## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 23-14132-JGR |
| Integrated Insight Therapy, LLC ) | Chapter 11 |
| ) | |
| Debtor. ) | |

## UNITED STATES TRUSTEE'S OBJECTION
## TO DEBTOR'S "FIRST DAY" MOTIONS

Patrick S. Layng, the United States Trustee for Region 19 (the "UST"), through counsel, files this objection to Integrated Insight Therapy, LLC's various "first day" motions as follows:

1.   Integrated Insight Therapy, LLC (the "Debtor") filed its voluntary petition for relief under chapter 11 of title 11, United States Code, on September 8, 2023.

2.   A committee of unsecured creditors has not been appointed in this case.

3.   Under 28 U.S.C. § 586, the United States Trustee is generally charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that United States Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the United States Trustee as a "watchdog").

4.   Under section 307 of title 11 of the United States Code, the UST has standing to be heard on this objection.

5.   On September 29, 2023, the Debtor filed its *Motion for Entry of an Order (I) Authorizing Debtor-in-Possession to Use Cash Collateral, (II) Granting Replacement Liens and Other Adequate Protection, and (III) Granting Related Relief* (the "Cash Collateral Motion") [Docket No. 28], a *Motion for Entry of an Order (I) Authorizing the Debtor to (A) Continue to Operate Their Cash Management System, and (B) Honor Certain Prepetition Obligations Related Thereto and (II) Granting Related Relief* (the "Cash Management Motion") [Docket No. 29], *Motion for Entry of an Order (I) Granting Discretionary Authority to the Debtor to Make Payments on Account of Prebankruptcy Claims of the Debtor's Critical Medical Supplies and Service Vendors and (II) Granting Related Relief* (the "Critical Vendor Motion") [Docket No. 30], and the *Motion for Entry of an Order (I) Authorizing Payment of Prepetition Employee Wages, Salaries, Benefits, and Business Expenses, and (II) Granting Related Relief* (the "Employee Wages Motion") [Docket No. 32].

6. A hearing on the various "first day" motions is set for October 6, 2023, at 11:00 am. *See* Docket No. 38.

## Objections

7. The record does not reflect that the Debtor has complied with L.B.R. 2081-1(a)(3), or (4). Specifically, it does not appear that the motions are accompanied by one or more factual affidavits by a representative of the movant or executed by an individual having personal knowledge of the facts therein supporting the requested relief. *See* L.B.R. 2081-1(a)(3). Additionally, it is unclear if the motions were accompanied by a notice in substantial conformity with L.B.F. 2081-1.2 and a copy of a response form in substantial conformity with L.B.F. 2081-1.3. *See* L.B.R. 2081-1(a)(4). Although such documents are referenced in the certificate of service filed by the Debtor at Docket No. 36, none of these documents appear to have been filed on the docket.

8. The record does not reflect that the Debtor served all required parties with notice of the hearing as required by this Court's Order [Docket No. 34] and L.B.R. 2081-1(c)(2). The Debtor filed Local Bankruptcy Form 2081-1.4 on October 4, 2023 [Docket No. 41] but has not filed a certificate of service certifying that it notified the parties who were served with copies of the various first day motions or those parties who requested notice in the case, or an affidavit of compliance with the service requirements in accordance with L.B.R. 2081-1(c)(2) and (3).

9. The Debtor should demonstrate that it complied with the requirements of L.B.R. 2081, and if it has not, the requested relief should be denied.

*Cash Collateral Motion*

10. Paragraph 9 of the Cash Collateral Motion identifies seven creditors that may have an interest in cash collateral (the "Prepetition Lienholders").[1] However, the Cash Collateral Motion does not identify the amount of each creditor's claim, nor does it provide any information to determine which creditor has senior priority status, such as the dates of the various UCC Financing Statements. Since, according to Schedule A/B, the Debtor only had $2,110 of cash and no accounts receivable on the petition date, it is highly likely that only one of the secured creditors needs to be adequately protected.[2]

11. The adequate protection that the Debtor proposes appears to go beyond what is necessary to protect the senior secured creditor's interest in $2,110 of cash collateral. For example,

---

[1] It is not clear why these seven creditors are listed as unsecured creditors on Schedule F rather than secured creditors on Schedule D.

[2] The UST questions whether there really was only $2,110 of cash and no accounts receivable on the petition date since the cash collateral budget contemplates beginning cash balances of several hundred thousand dollars at the beginning of every month, including $355,264 at the beginning of September, just eight days prior to the Petition Date.

2

paragraphs 15, 16, and 17 of the Cash Collateral Motion describe two avoidance actions that the Debtor values at a minimum of $167,500 and proposes to provide the recoveries from both actions to the Prepetition Lienholders. It is not clear if the Debtor intends to cap the amount that it would pay to the Prepetition Lienholders from the avoidance action recoveries to the extent of the decline in the value of such creditor's interest in cash collateral.

12. The UST objects to paragraph 6 of the proposed interim order because this provision provides a sixty (60) day challenge period for a statutory committee in the chapter 11 case to challenge the liens and/or the amount owed under the Prepetition Lienholder Contracts. Since this is a small business chapter 11 case, it is highly unlikely that an unsecured creditors committee will be appointed. *See* 11 U.S.C. § 1102(a)(3). Moreover, as discussed below, provisions that bind the estate and parties in interest with respect to a secured creditor's lien are inappropriate without a demonstration of necessity, especially in an interim order, and such necessity has not been demonstrated here.

13. The UST objects to paragraph 15 of the proposed interim order because this provision references providing superpriority liens under 364(c)(1), which is not appropriate in the context of a cash collateral motion where no DIP financing is being provided. This paragraph also references a "Lender," which is a term not otherwise defined in the Cash Collateral Motion. The UST requests that this paragraph be deleted in this entirety.

14. The UST objects to the Cash Collateral Motion based on the Debtor's request for interim and final approval of the following provisions that, pursuant to L.B.R. 4001-2(a)(2), will not be approved by the Court without a demonstration of necessity or cause:

  a. *Provisions binding the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's lien or debt*. These provisions are located in paragraphs 4, 5, and 6 of the proposed interim order. The Debtor failed to demonstrate the necessity of these provisions pursuant to L.B.R. 4001-2(a)(2)(B), particularly on an interim, emergency basis.

  b. *Waivers of 11 U.S.C. § 506(c)*. This provision is located in paragraph 14 of the proposed interim order. The Debtor failed to demonstrate the necessity of this provision pursuant to L.B.R. 4001-2(a)(2)(D), particularly on an interim, emergency basis.

  c. *Adequate protection provisions that create liens on claims for relief arising under the Bankruptcy Code*. These provisions are located in paragraph 17 of the Cash Collateral Motion, paragraph 10 of the proposed interim order, and paragraph 14 of the proposed interim order (granting blanket liens on all property of the estate.). The Debtor failed to demonstrate the necessity of these provisions pursuant to L.B.R. 4001-2(a)(2)(J), particularly on an interim, emergency basis.

3

15. None of the above "bells and whistles" provisions appear necessary to adequately protect a secured creditor's interest in $2,110 of cash collateral and the Debtor has not demonstrated their necessity. Approval of such provisions should be granted only in a final cash collateral order, after proper notice to creditors, if at all.

16. Moreover, the Cash Collateral Motion failed to comply with the procedural requirements of L.B.R. 4001-2(a)(2) that require the Debtor to identify the location of the aforementioned provisions by page and/or line number and to then provide the justification for the inclusion of each such provision or finding of fact.

17. Finally, the Debtor attaches a budget as Exhibit B to the Cash Collateral Motion, which is a monthly budget covering the period of September 2023 through February 2024. The UST makes the following objections related to the budget:

   a. The budget projects that the Debtor will lose $168,352 over the next four-months (October 2023 – January 2024). In February 2024, the budget projects that the Debtor will receive a new source of revenue, classified as "Other" totaling $375,000 that causes the Debtor to have a positive net cash flow over the total five-month period. The Debtor should explain the source of this influx of $375,000 in February 2024.

   b. The budget does not account for the payment of quarterly fees under 28 U.S.C. § 1930(a)(6), which will be payable by the Debtor. Such fees will further deepen the Debtor's projected losses from October 2023 through January 2024.

   c. It is not clear if the $13,081 line item for "Professional Fees" takes into consideration any fees that may be owed to a patient care ombudsman, if one is appointed. If such fees are not included in the budget, the accrual of such fees will further deepen the Debtor's projected losses from October 2023 through January 2024.

   d. It is not clear if the budget takes into consideration the $55,094.24 of critical vendor claims that the Debtor seeks authorization to pay in the Critical Vendor Motion. If such claims are not included in the budget, payment of such claims will further deepen the Debtor's projected losses from October 2023 through January 2024.

*Cash Management Motion*

18. In paragraph 22 of the Cash Management Motion, the Debtor seeks authorization to use a certain expense card service called "Divvy," which allows the Debtor to provide its employees with a credit card that the Debtor can pre-load with approved expenses. The proposed order authorizes the Debtor to continue using its credit cards at paragraph 17. The UST is not

familiar with "Divvy," but objects to the extent that the Debtor intends to use any credit cards that had an outstanding balance on the petition date. Moreover, to the extent that the Court authorizes the Debtor to use credit cards post-petition, the order should require the Debtor to attach all credit card statements to its monthly operating reports and to report on all transactions associated with the credit cards.

19. The proposed order purports to authorize the Debtor to continue using the Bank Accounts for various purposes, even though the defined term "Bank Accounts" includes two accounts at First Colorado National Bank that the Debtor has agreed to close at the UST's request. The UST requests a modification to the proposed order to clarify that the Debtor will close the accounts at First Colorado National Bank as soon as possible and will attach the closing statements to its monthly operating reports.

20. The UST objects to paragraphs 6 and 12 of the proposed order authorizing the Debtor to open and close bank accounts in the ordinary course of business and requests that these paragraphs be removed from the order.

21. The UST objects to the Debtor's request for a waiver of section 345(b) of the Bankruptcy Code. The UST will work with the Debtor to ensure that its two pre-petition bank accounts at U.S. Bank are converted into Debtor-in-Possession accounts to ensure that estate funds are properly protected. This is particularly important in this case because the budget attached to the Cash Collateral Motion contemplates that the Debtor will maintain a cash balance in excess of the $250,000 FDIC limit for all but one of the next five months of the case.

22. The UST does not oppose the Debtor's continued use of its pre-petition bank accounts with U.S. Bank *on an interim basis,* until such accounts are converted to Debtor-in-Possession accounts. Any new bank account opened by the Debtor post-petition for the purpose of holding an adequate assurance deposit should be opened as a Debtor-in-Possession account.

*Critical Vendor Motion*

23. In the Critical Vendor Motion, the Debtor seeks authorization to pay up to $55,094.24 in pre-petition claims to two vendors, McKesson Corporation and Reliatrax. According to the motion, McKesson Corporation provides the Debtor with "critical medical supplies and services" and Reliatrax provides electronic health record services.

24. The UST first notes that neither McKesson Corporation nor Reliatrax are listed anywhere on Schedules D, E, or F, which raises a concern that there may be other creditors omitted from the debt schedules that have not received notice of the Critical Vendor Motion. In fact, on October 4, 2023, the Debtor filed an application to employ an accountant [Docket No. 39] where it disclosed that the accountant, Cascadia Management Group, has a prepetition claim totaling $6,689.92, which also is not listed anywhere on Schedules D, E, or F. This raises

5

concerns about the quality of the disclosures in the schedules and strongly suggests that they cannot be relied upon.

25. All parties should be given adequate notice of the Critical Vendor Motion under L.B.R. 9013-1 and pursuant to Fed. R. Bankr. P. 7004 and 9014. In a critical vendor motion, the Debtor should provide adequate notice to all creditors and establish that a vendor will no longer deliver or will refuse delivery of its products and additionally the debtor must show:

> (1) Such payments are in fact critical to their reorganization;
>
> (2) Discrimination among unsecured creditors is the only way to facilitate a reorganization;
>
> (3) Non-critical vendors will be at least as well off as they would otherwise be if the critical vendor order is not entered;
>
> (4) Such payments will not diminish the amount of funds that ultimately will be available for the payment of non-critical vendors.

*See Capital Factors Inc. v. Kmart Corp*., 359 F.3d 866, 868-69 (7th Cir. 2004).

26. At minimum, the Critical Vendor Motion lacks factual detail to enable parties to determine if factors 3 and 4 are met. As discussed above, the budget attached to the Cash Collateral Motion shows the Debtor sustaining continuing losses for the next four months of at least $168,352 and the Debtor has not explained how it will suddenly receive an extra influx of $375,000 in month 5.

27. Finally, the proposed order granting the Critical Vendor Motion states that the Court has considered the "Affidavit of Joel Watts" in granting the motion. The UST has not been able to identify such affidavit in the record.

*Employee Wages Motion*

28. In the Employee Wages Motion, the Debtor requests authority to pay pre-petition employee wages, salaries, benefits, and business expenses. However, the Employee Wages Motion is moot because the Debtor admits that it already made the payments to its employees. *See* Docket No. 32-1. There is no reason for the Court to grant the Debtor authority to pay pre-petition claims that is has already paid without Court authorization.

29. To the extent that the Court grants the Employee Wages Motion, the UST requests that the proposed order be modified to specify that the Debtor is only authorized to pay the amounts listed to the individuals listed on the exhibit attached to the Employee Wages Motion, up to an aggregate cap of $266,053.23.

WHEREFORE, the UST objects to the Debtor's various "first day" motions for the reasons set forth above and requests such other and further relief as the Court deems appropriate.

Dated:  October 5, 2023  Respectfully submitted,

PATRICK S. LAYNG
UNITED STATES TRUSTEE
/s/ Benjamin A. Sales
By: Benjamin A. Sales, #51551
Trial Attorney for the U.S. Trustee
1961 Stout Street, Suite 12-200
Denver, Colorado 80294
(303) 312-7236 telephone
(303) 312-7259 facsimile
Benjamin.a.sales@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify on October 5, 2023, that a copy of **UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S "FIRST DAY" MOTIONS** was served on the following parties (and any other parties requesting electronic notice in the case) in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

- **Scott K. Brown**  sbrown@acjblaw.com, colleen@acjblaw.com
- **Eric J. Langston**  elangston@aegislaw.com, ericlangston357.gmail.com@recap.email

/s/ Benjamin A. Sales
Office of the United States Trustee